**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **UNITED STATES** | § | |
| | § | |
| **v.** | § | **EP-13-CR-2311-KC** |
| | § | |
| **MATTHEW BAPTISTE,** | § | |
| | § | |
| **Defendant**. | § | |
| | § | |

## ORDER

On this day, the Court considered the above-captioned case.  Because False Statement, 18 U.S.C. § 1001, does not constitute a sex offense as defined by the Sex Offender Registration and Notification Act, 42 U.S.C. § 16901, et seq. ("SORNA"), it is hereby **ORDERED** that Defendant shall not be required to register as a sex offender as a condition of supervised release.

## I.    BACKGROUND

On October 23, 2013, the Grand Jury sitting in El Paso, Texas returned an Indictment charging Defendant with two counts of Abusive Sexual Contact, 18 U.S.C. § 2244(b). Indictment, ECF No. 3.  On March 14, 2014, Defendant entered into a plea agreement ("Plea Agreement") with the government, pursuant to which he agreed to plead guilty to a one count Information charging him with False Statement in violation of 18 U.S.C. § 1001(a)(2).  Plea Agreement, ECF No. 40. As part of the plea agreement, Defendant admitted to the facts set out in an attached factual basis ("Factual Basis").

The Factual Basis provides that:

On September 26, 2012 Matthew Baptiste (Baptiste) was interviewed by Federal Bureau of Investigation (FBI) Special Agents (SAs) with respect to an allegation of sexual contact made against him by M.A. M.A. was a then-seventeen year old

foreign exchange student from Japan who was being hosted by Baptiste in his home. At the time M.A. made the claim against Baptiste the Baptiste family resided on Ft. Bliss in an area under the exclusive jurisdiction of the United States.

Over the course of the interview Baptiste made several representations to the FBI SAs including that on the night of September 13, 2012 his wife was physically present in their home the entire evening; that on the night of September 13, 2012 Baptiste did not receive a massage from M.A.; and that on the night of September 13, 2012 Baptiste had never touched M.A.'s inner thighs and licked her vagina with his tongue.

These statements were not factually true in that on the night of September 13, 2012 Baptiste's wife was not home the entirety of the evening, she was performing 24 hour Staff Duty Officer duty at her military command's headquarters and this duty kept her out of the home for the majority of those 24 hours; on the evening of September 13, 2012 Baptiste did receive a massage from M.A.; and that on the evening of September 13, 2012 Baptiste did touch M.A.'s inner thighs did [sic] lick M.A.'s vagina with his tongue.

Baptiste now admits that these statements were materially false in that Defendant's false statements were an attempt to avoid further investigation and questioning by Federal Bureau of Investigation Special Agents into the allegation of sexual contact made against him by M.A. Baptiste further admits that when making these materially false statements he acted with the knowledge that his conduct was unlawful.

Plea Agreement 6

The Court held a plea hearing on March 14, 2014, and accepted Defendant's guilty plea.  ECF No. 42.

On June 4, 2014, the United States Probation Department filed its Presentence Investigation Report ("PSR").  PSR, ECF No. 45.  As part of the PSR's sentencing options, the probation officer recommended that the Court impose special conditions of supervised release, to include that Defendant participate in a sex offender treatment program, that Defendant not associate with children under the age of eighteen except in the presence of an adult, and that Defendant not reside within 1,000 feet of a school without approval of a probation officer, among other conditions.  PSR 22-23.  Although the PSR did not state that sex offender

2

registration is a mandatory condition of supervised release pursuant to 18 U.S.C. § 3583(d), the Court sua sponte raised the issue of registration under SORNA to resolve any ambiguity as to Defendant's registration requirements pursuant to 42 U.S.C. § 16913. The Court ordered the parties to brief the issue.

On June 22, 2014, Defendant filed his Sentencing Memorandum. Def.'s Mem., ECF No. 51. The government filed its Brief on June 25, 2014. Gov't's Br., ECF No. 54. Defendant filed a Supplement to his Sentencing Memorandum on July 7, 2014, Def.'s Suppl., ECF No. 56, and the government filed its Response on July 10, 2014. Gov't's Resp., ECF No. 57.

## II.    DISCUSSION

### A.    Analysis

In its brief, the government argues that the Court should look to the facts and circumstances surrounding the criminal offense at issue in this case, False Statement, to determine whether it constitutes a "sex offense" as defined by SORNA. Gov't's Br. 4, 6. According to the government, Defendant admitted to the facts set forth in the Factual Basis of the Plea Agreement regarding his sexual conduct with M.A., who was a minor pursuant to federal law. *Id.* at 6. Therefore, the government argues, Defendant's conviction for False Statement involves "conduct that by its nature is a sex offense against a minor," within the meaning of 42 U.S.C. § 16911(7)(I), and § 16913 mandates sex offender registration. *Id.* at 6-7.

The government also argues that, if the Court concludes that sex offender registration is not a mandatory condition of supervised release under the facts of this case, the Court should nonetheless require Defendant to register as a sex offender pursuant to the Court's discretionary power to do so. *Id.* at 7 (citing 18 U.S.C. § 3583(d)(1)-(3)).

Defendant argues that he need not register as a sex offender because the sex offender registration statute provides a closed set of federal offenses that mandate sex offender registration, and the offense to which Defendant pleaded guilty, False Statement, is not an enumerated offense. Def.'s Mem. 4.  Defendant further contends The National Guidelines for Sex Offender Registration and Notification ("SMART Guidelines"), which provide guidance and assistance in implementing sex offender registration and notification programs, constitute the Attorney General's interpretation of SORNA, and § 16911(7)(I) in particular.  Def.'s Suppl. 1-2. As such, Defendant explains the Court should accord that interpretation deference pursuant to *Chevron U.S.A. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984).  *Id.* at 2-4. According to Defendant, such deference results in a finding that Defendant is not required to register.  *See id.*

> Specifically, the relevant portion of the SMART Guidelines provides:
>
> Conduct by Its Nature a Sex Offense Against a Minor (§ 111(7)(I)): The final clause covers "[a]ny conduct that by its nature is a sex offense against a minor." It is intended to ensure coverage of convictions under statutes defining sexual offenses in which *the status of the victim as a minor is an element of an offense*, such as specially defined child molestation or child prostitution offenses, and other offenses prohibiting sexual activity with underage persons. Jurisdictions can comply with the offense coverage requirement under this clause by including convictions for such offenses in their registration requirements.

Office of the Attorney General; The National Guidelines for Sex Offender Registration and Notification, 73 Fed. Reg. 38,030, 38,052 (Jul. 2, 2008) (emphasis added).

Defendant argues that the SMART Guidelines require a sentencing court, when deciding whether to impose sex offender registration as a condition of supervised release, to employ what is known as the "categorical approach," whereby the court considers only the elements of the offense

without considering the facts and circumstances surrounding the offense. *Id.* at 3-5. [1]  Defendant

further argues that, under this approach, his conviction for False Statement pursuant to 18 U.S.C.

§ 1001 does not require him to register as a sex offender because the offense does not contain an

element that the victim be a minor child. [2]  *Id.* at 3 (citing SMART Guidelines, 73 Fed. Reg. at

38,052).

Defendant further argues that because registration as a condition of supervised release is

not mandated pursuant to Texas law, the Court should not impose sex offender registration based

upon Texas law, nor upon the Court's discretionary power to do so.  Def.'s Mem. 2-9. The Court

addresses these arguments in turn.

### 1.    SORNA and the scope of § 16911(5)(A)(ii)

Pursuant to SORNA, a person must register as a sex offender, and keep that registration

current, if that person is a "sex offender," which the statute defines as "an individual who was

convicted of a sex offense." *United States v. Gonzalez-Medina*, --- F.3d ----, 2014 WL 2977128,

---

[1] As the United States Court of Appeals for the Ninth Circuit explained in *United States v. Mi Kyung Byun*, 539 F.2d 982, 990 (9th Cir. 2008),

[i]n the contexts of immigration law and of the enhancement of criminal sentences, courts usually apply a categorical, or modified categorical, approach to determine whether the crime of which the defendant was convicted meets the statutory requirements to have immigration consequences or provides the basis for a sentencing enhancement, rather than allowing examination of the underlying facts of an individual's crime.

*Byun*, 539 F.3d at 990.

[2] 18 U.S.C. § 1001 provides:

[W]hoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully—
(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
shall be fined under this title, imprisoned not more than 5 years.

18 U.S.C. § 1001.

at *2 (5th Cir. Jul. 2, 2014) (citing 42 U.S.C. §§ 16913(a), 16911(1)).  As relevant here, SORNA defines a "sex offense" as

> (i) a criminal offense that has an element involving a sexual act or sexual contact with another; [or]
> (ii) a criminal offense that is a specified offense against a minor; [or]
> (iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or 117, of Title 18.

42 U.S.C. § 16911(5)(A).

SORNA defines "criminal offense" in turn as "a State, local, tribal, foreign, or military offense (to the extent specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. § 951 note)) or other criminal offense."  *Id.* § 16911(6).  Finally, SORNA defines "specified offense against a minor" as set out in § 16911(5)(A)(ii) in the following way:

> (7) Expansion of definition of "specified offense against a minor" to include all offenses by child predators
>
> The term "specified offense against a minor" means an offense against a minor that involves any of the following:
> (A) An offense (unless committed by a parent or guardian) involving kidnapping.
> (B) An offense (unless committed by a parent or guardian) involving false imprisonment.
> (C) Solicitation to engage in sexual conduct.
> (D) Use in a sexual performance.
> (E) Solicitation to practice prostitution.
> (F) Video voyeurism as described in section 1801 of Title 18.
> (G) Possession, production, or distribution of child pornography.
> (H) Criminal sexual conduct involving a minor, or the use of the Internet to facilitate or attempt such conduct.
> (I) Any conduct that by its nature is a sex offense against a minor.

*Id.* § 16911(7).

Defendant, relying on the canon of statutory construction of *expressio unius est exclusio alterius*, which provides that the "expression of some connotes the exclusion of others," *see Teltech Sys., Inc. v. Bryant*, 702 F.3d 232, 238 (5th Cir. 2012), first argues that §

16911(5)(A)(iii) sets out a closed set of federal offenses for which a person must register, and that the federal false statement offense to which he pleaded guilty is not enumerated there. Def.'s Mem. 4.  It is true that, as Defendant points out, unlike 5(A)(iii), subsections (5)(A)(i) and (5)(A)(ii) do not use the modifier "federal" to describe the criminal offenses constituting sex offenses in those subsections.  *See* 42 U.S.C. § 16911(5)(A). This could indicate that § 16911(5)(A)(iii) is the exclusive list of federal offenses requiring registration.  *See id.*  Further, the definition of "criminal offense" in § 16911(6) also does not include the term "federal," in defining criminal offenses when it provides "State, local, tribal, foreign, or military offense (to the extent specified by the Secretary of Defense under section 115(a)(8)(C)(i) of Public Law 105-119 (10 U.S.C. § 951 note) or other criminal offense."  *Id.* § 16911(6). Thus, it is possible, as Defendant claims, that § 16911(5)(A)(i) and (A)(ii) do not apply to a federal criminal offense such as his; therefore, his offense cannot constitute a sex offense   *See* Def.'s Mem. 4.  However, the court finds this argument to be unpersuasive for the following reasons.

In *United States v. Dodge*, 597 F.3d 1347 (11th Cir. 2010), the United States Court of Appeals for the Eleventh Circuit considered the same argument regarding the statutory language of 16911(5)(A) and 16911(6) and the applicability of § 16911(5)(A)(i) and (5)(A)(ii) to federal criminal offenses. *See Dodge*, 597 F.3d at 1351-53. The *Dodge*  court found that looking at the statute as a whole, including its plain language, its structure, its legislative history, and its purpose, a federal criminal offense not enumerated in §16911(5)(A)(iii) may still qualify as a sex offense under § 16911(5)(A)(i) or (ii).  *Dodge*, 597 F.3d at 1352-53.  The *Dodge* court noted, in particular, that § 16911(7), which sets forth the list of offenses that constitute a "specified offense against a minor" includes "video voyeurism" as described in 18 U.S.C. § 1801. *Id.* at 1352.  The *Dodge* court explained that "[i]f Congress intended that 42 U.S.C. § 16911(5)(A)(iii)

represent a closed universe of federal crimes requiring SORNA registration, Congress would not have listed another specific federal crime in defining 'specified offense against a minor,'" the definition of sex offense in § 16911(5)(A)(ii).  *See id.* at 1352-53.  Moreover, the court in *Dodge* explained that § 16911(6), though not listing "federal offense" as within the definition of "criminal offense," does state "or other criminal offense," which the *Dodge* court reasoned must include federal offenses.  *See id.* at 1352.

Moreover, although not directly addressing the issue Defendant has raised, the Ninth Circuit on at least two occasions, in *United States v. Becker*, 682 F.3d 1210 (9th Cir. 2012) and *United States v. Mi Kyung Byun*, 539 F.2d 982 (9th Cir. 2008), required the defendant to register as a sex offender based on the violation of a federal criminal statute not enumerated in § 16911(5)(A)(iii).  *See Becker*, 682 F.3d at 1212-13 (citing *Byun*, 539 F.3d at 990-94).

The Court finds the reasoning in *Dodge* and the results in the Ninth Circuit cases to be persuasive.  For the reasons set forth in *Dodge*, the Court finds that § 16911(5)(A)(iii) is not the exclusive set of federal criminal offenses requiring sex offender registration, and that § 16911(5)(A)(i) and (ii) may include federal criminal violations in their definitions of sex offense.[3]

The offense to which Defendant pleaded guilty, False Statement, is not one of the enumerated federal offenses in section § 16911(5)(A)(iii), and therefore this subsection  is inapplicable to Defendant.  *See* 42 U.S.C. § 16911(5)(A)(iii); Def.'s Mem. 4-5; Gov't's Br. 2.  Also, as Defendant explains, § 16911(5)(A)(i), is inapplicable to the facts of this case because the false statement offense at issue does not have "an element involving a sexual act," which this provision requires.  *See* § 16911(5)(A)(i); Def.'s Mem 5; Gov't's Br. 2; *see* 18 U.S.C. § 1001.

---

[3] The Court has reviewed the SMART Guidelines for insight into this issue but they provide no clarification.

The Court must consider, however, whether Defendant's offense constitutes "a specified offense against a minor" within the meaning of § 16911(5)(A)(ii).

### 2.    Specified offense against a minor based upon § 16911(7)

Section 16911(7) defines the term "specified offense against a minor" in § 16911(5)(A)(ii) as follows: "[t]he term 'specified offense against a minor' means an offense against a minor that involves any of the following: . . . (I) Any conduct that by its nature is a sex offense against a minor." 42 U.S.C. § 16911(5)(A)(ii), 16911(7)-(7)(I).

And , as set out above, the relevant portion of the SMART Guidelines provides:

> Conduct by Its Nature a Sex Offense Against a Minor (§ 111(7)(I)): The final clause covers "[a]ny conduct that by its nature is a sex offense against a minor." It is intended to ensure coverage of convictions under statutes defining sexual offenses in which the status of the victim as a minor is an element of an offense, such as specially defined child molestation or child prostitution offenses, and other offenses prohibiting sexual activity with underage persons. Jurisdictions can comply with the offense coverage requirement under this clause by including convictions for such offenses in their registration requirements.

SMART Guidelines, 73 Fed. Reg. at 38,052 (emphasis added).

In determining the meaning of "specific offense against a minor," the Court first considers Defendant's argument that the Court must defer to the Attorney General's interpretation of this provision in the SMART Guidelines. To do so, the Court begins by setting out the law of *Chevron* deference.

### a.    *Chevron* deference

Under the Supreme Court's holding in *Chevron U.S.A. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837 (1984), courts must defer to an agency's reasonable interpretation of an ambiguous statute that the agency is tasked with implementing. *Martinez v. Mukasey*, 519 F.3d 532, 542-43 (5th Cir. 2008) (citing *Chevron*, 467 U.S. at 845). "Administrative agencies are entrusted with the authority to administer Congressionally-created programs, a power which

necessarily involves filling in statutory gaps created, either expressly or implicitly, by Congress." *Id.* (citations omitted).  When the court reviews an agency's interpretation of a statute that the agency administers, the court first considers whether Congress has directly spoken to the question at issue. *Chevron*, 467 U.S. at 842.  If Congress has explicitly spoken, both the court and the agency must "give effect to the unambiguously expressed intent of Congress."  *Id.* at 842–43; *Martinez*, 519 F.3d at 543.  If, by contrast, "Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."  *Chevron*, 467 U.S. at 843–44.  In that case, Courts give agency interpretations "controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute."  *Id.* at 844; *Orellana-Monson v. Holder*, 685 F.3d 511, 517 (5th Cir. 2012).  The same is true when Congress implicitly delegates authority to an agency on a matter within the statute.  *Chevron*, 467 U.S. at 844; *Martinez*, 519 F.3d at 543.

A *Chevron* analysis requires two steps: First, the court considers "whether 'the statute is silent or ambiguous with respect to the specific issue' before it;" second, the court considers "whether the agency's answer is based on a permissible construction of the statute."  *Orellana-Monson*, 685 F.3d at 520 (quoting *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999)).

   **b.**  **Applicability of *Chevron* deference to the SMART Guidelines**

Before deciding whether the SMART Guidelines are accorded *Chevron* deference, however, the Court must first decide whether *Chevron* is the appropriate framework at all. To do so, the court assesses preliminary issues including reviewing the administrative decision-making process to determine whether the agency's action is entitled to *Chevron* deference. *See United States v. Mead Corp.*, 533 U.S. 218, 226–31 (2001) (quoting *Chevron*, 467 U.S. at 843). The Court also considers a related argument advanced by the government that the SMART

10

Guidelines provisions at issue are "interpretive rules" and do not warrant *Chevron* deference. Gov't's Resp. 4-6.  Although not raised by the parties, the Court also considers the applicability of the *Chevron* framework in the criminal context.

### i.      Administrative rulemaking

Under the Supreme Court's decision in *Mead*, an agency's interpretation of an ambiguous statute may receive *Chevron* deference only if Congress "'delegated authority to the agency generally to make rules carrying the force of law,'" and if the "agency interpretation claiming deference" was "promulgated in the exercise of that [delegated] authority." *BCCA Appeal Grp. v. U.S. E.P.A.*, 355 F.3d 817, 825 (5th Cir. 2003) (quoting *Mead*, 533 U.S. at 226–27).

However, if Congress has not delegated to the agency the authority to make rules carrying the force of law, or if the agency interpretation at issue was not promulgated in the exercise of such authority, *Chevron* deference is not warranted.  *See Gonzales v. Oregon*, 546 U.S. 243, 255-56 (2006) (citing *Mead*, 533 U.S. at 226-27).  In such situations, the agency interpretation is "'entitled to respect' only to the extent it has the "power to persuade."  *Id.* (quoting *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).  "The weight of deference afforded to agency interpretations under *Skidmore* depends upon 'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'"  *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, --- U.S. ----, 133 S.Ct. 2517, 2533 (2013) (quoting *Skidmore*, 323 U.S. at 140).

For the following reasons, the Court concludes that *Chevron*, rather than *Skidmore*, is the appropriate framework to determine the level of deference to which the SMART Guidelines are entitled.  First, the SMART Guidelines are the product of formal notice-and-comment rulemaking pursuant to authority expressly granted by Congress to the Attorney General. In the

SORNA statute, Congress explicitly left a gap for the Attorney General to fill, by expressly delegating authority to the Attorney General to issue "guidelines and regulations to interpret and implement this subchapter."  *See* 42 U.S.C. § 16912(b).  This grant of authority over "the relevant subchapter" applies to 42 U.S.C. §§ 16901-16962, the SORNA statute.  *See United States v. Stevenson*, 676 F.3d 557, 564 (6th Cir. 2012).  With this unambiguous grant of authority to the Attorney General, § 16912(b) allows the Attorney General to implement both substantive and interpretive regulations regarding the statute.  *Id.; see United States v. Bridges*, 741 F.3d 464, 468 & n.5 (4th Cir. 2014).

Further, the SMART Guidelines have been properly promulgated complying with the notice-and-comment procedures as set out in the Administrative Procedures Act ("APA"), 5 U.S.C. § 553.  *See Bridges*, 741 F.3d at 468; *Stevenson*, 676 F.3d at 565-66.[4]  Indeed, the Second Circuit has stated that the SMART Guidelines were an act of substantive rulemaking and have the force and effect of law.  *United States v. Lott*, 750 F.3d 214, 217-18 (2d Cir. 2014) ("These proposed guidelines carry out a statutory directive to the Attorney General, in section 112(b) of SORNA (42 U.S.C. § 16912(b)) to issue guidelines to interpret and implement SORNA." (quoting 72 Fed. Reg. 30,210 (May 30, 2007));[5] *Stevenson*, 676 F.3d at 565; *see also Mead,* 533 U.S. at 229 ("We have recognized a very good indicator of delegation meriting *Chevron* treatment in express congressional authorizations to engage in the process of rulemaking or

---

[4] As explained by the Stevenson  court:
> The SMART guidelines were published in the Federal Register on May 30, 2007, and made open to comments until August 1, 2007. 72 Fed.Reg. at 30,210, 30212. The Attorney General published the final guidelines in the Federal Register on July 2, 2008, responding to the comments he received. 73 Fed.Reg. 38,030, 38,031, 38,035–36. Applying the thirty-day advance publication requirement, the SMART guidelines became final August 1, 2008.

Stevenson, 676 F.3d at 566 n.8.

[5] Though the *Lott* court quotes the Interim proposed SMART Guidelines, the Final SMART Guidelines provide the same.  *See* 73 Fed. Reg. at 38,030.

adjudication that produces regulations or rulings for which deference is claimed."). Both the Fourth Circuit and the Sixth Circuit have accorded *Chevron* deference to the SMART Guidelines. *See Bridges*, 741 F.3d at 468 & n.5; Stevenson, 676 F.3d at 564-65.

Based upon this persuasive authority, this Court is confident that these fundamental *Mead* considerations of congressional delegation of agency authority and formal agency rulemaking procedures have been satisfied in the promulgation of the SMART Guidelines. Accordingly, the Court proceeds to consider the government's related argument that the *Chevron* framework should not apply to the portion of the SMART Guidelines interpreting § 16911(7)(I) because it is merely an "interpretive rule." *See* Gov't's Resp. 4-6

### ii.    Interpretive rule

The government asserts that the relevant section of the SMART Guidelines explaining the meaning of § 16911(7)(I) is an "interpretive rule" because it interprets or explains the meaning of the statute, as opposed to a "substantive rule" which implements the statute. *Id.* (citing *Guardian Sav. v. Loan Ass'n v. Fed. Sav. and Loan Ins. Corp.*, 589 F.2d 658 (D.C. Cir. 1978)). As such, the government contends it is not entitled to the force of law and should not be accorded *Chevron* deference. *Id.* The Court disagrees.

The Supreme Court had occasion to address a similar argument in *Long Island Care at Home, Ltd. v. Coke*, 551 U.S. 158, 171-174 (2007). There, the issue was whether a Department of Labor regulation exempting domestic service employees engaged in companionship services from provisions of the Fair Labor Standards Act applied to individuals employed by an employer other than the family or household using the services. *Coke*, 551 U.S. at 162. Citing to *Mead*, the Respondent in that case argued that the regulation was not legally binding because it was an

"interpretive" regulation, not to be used to fill a statutory gap, rather intended to describe the agency's opinion of the meaning of the statute. *Id.* at 172 (citing *Mead*, 533 U.S. at 232).

The Supreme Court unanimously held that the so-called interpretive regulation in the case was to be accorded *Chevron* deference. *Id.* at 172-73. The Court rested this conclusion on several factors. First, the Court noted that the rule "directly governed the conduct of members of the public," "'affecting individual rights and obligations.'" *Id.* (quoting *Chrysler Corp. v. Brown*, 441 U.S. 281, 302 (1979)). Second, the Court explained that the agency engaged in full notice-and-comment rulemaking procedures, which the agency would not have needed to do if the regulation were an "interpretive rule" within the meaning of the APA. *Id.* at 173 (citing 5 U.S.C. § 553(b)(3)(A) (exempting from notice-and-comment procedures "interpretative rules,[6] general statements of policy, or rules of agency organization, procedure, or practice"). Additionally, the Court noted that each time it amended the rule, the agency engaged in full notice-and-comment rulemaking procedures. *Id.* The Court also observed that the agency had historically treated the regulation as binding for thirty years. *Id.* Finally, the Court explained,

> the ultimate question is whether Congress would have intended, and expected, courts to treat an agency's rule, regulation, application of a statute, or other agency action as within, or outside, its delegation to the agency of "gap-filling" authority. Where an agency rule sets forth important individual rights and duties, where the agency focuses fully and directly upon the issue, where the agency uses full notice-and-comment procedures to promulgate a rule, where the resulting rule falls within the statutory grant of authority, and where the rule itself is reasonable, then a court ordinarily assumes that Congress intended it to defer to the agency's determination. *See Mead*, at 229–233.

*Id.* at 173-74.

Thus, that a regulation interprets or fills gaps in a statute's text does not place the regulation outside of *Chevron*'s domain. *See id.*

---

[6] The terms "interpretative rules" and "interpretive rules" are used interchangeably in this body of law. *See Iowa League of Cities v. E.P.A.*, 711 F.3d 844, 855 n.2 (8th Cir. 2013).

Applying this analysis to the SMART Guidelines defining "any conduct that by its nature is a sex offense against a minor," the Court finds that the *Chevron* framework applies to this regulation.  First, like the regulation at issue in *Coke*, the SMART Guidelines govern the conduct of members of the public and set forth individual rights and duties.  *See Coke*, 551 U.S. at 172-73.  The SMART Guidelines define "sex offense" through the term "specified offense against a minor," and they explain the scope of the term.  *See* 42 U.S.C. § 16911(1), 16911(5)(A)(ii), 16911(7)(I); SMART Guidelines, 73 Fed. Reg. at 38,052.  It is the scope of this term which determines whether an individual convicted of a criminal offense must register as a sex offender and maintain registration information.  *See* 42 U.S.C. §§ 16911, 16913.  And, it is therefore the scope of this term which determines whether an individual faces criminal prosecution for failing to fulfill this duty to register and to maintain registration information. *See* 18 U.S.C. § 2250.  For this reason, the rule sets forth rights and duties of individuals and governs the conduct of the public. *See Coke*, 551 U.S. at 172-73.

Second, as explained above, the Attorney General employed formal notice-and-comment rulemaking procedures in the promulgation of the SMART Guidelines pursuant to Congress's very broad grant of statutory authority to the Attorney General in § 16912(b). *See Lott*, 750 F.3d at 217-18; *Bridges*, 741 F.3d at 468; *Stevenson*, 676 F.3d at 565-66.  This also indicates that the Attorney General was not announcing a so-called "interpretive rule," as the term is defined in the APA, because the issuance of an interpretive rule would not have required the complete rulemaking procedures followed with this regulation.  *See Coke*, 551 U.S. at 173.

Finally, the SMART Guidelines are a broad and detailed set of regulations, the product of considerable effort and focus.  The provision at issue, the definition of "sex offense" itself, is of fundamental import to the statute and regulations which were designed to ensure sex offender

registration. *See* 42 U.S.C. § 16913; SMART Guidelines, 73 Fed. Reg. at 38,030 ("The SORNA reforms are generally designed to strengthen and increase the effectiveness of sex offender registration and notification for the protection of the public, and to eliminate potential gaps and loopholes under the pre-existing standards by means of which sex offenders could attempt to evade registration requirements or the consequences of registration violations."). It is through the provision of the SMART Guidelines addressing § 16911(7)(I) that the Attorney General has focused on the meaning of that statutory section and addressed its meaning. *See* SMART Guidelines, 73 Fed. Reg. at 38,052.

For all of these reasons, the Court finds that Congress intended the federal courts to defer to the SMART Guidelines, particularly this section of the SMART Guidelines explaining the meaning of § 16911(7)(I). *See Coke*, 551 U.S. at 172-74.[7] Therefore, this section of the SMART Guidelines is subject to the *Chevron* framework even though it may "interpret" a provision of a statute.

### iii.    *Chevron* framework in the criminal context

Finally, the Court recognizes that this is a criminal case and it is not wholly clear whether *Chevron* applies with full force in a criminal matter. *See United States v. Orellana*, 405 F.3d 360, 369 (5th Cir. 2005); *see also Crandon v. United States*, 494 U.S. 152, 177 (1990) (Scalia, J., concurring) ("The law in question, a criminal statute, is not administered by any agency but by the courts. . . . The Justice Department, of course, has a very specific responsibility to determine for itself what this statute means, in order to decide when to prosecute; but we have never thought that the interpretation of those charged with prosecuting criminal statutes is entitled to

---

[7] The Court notes that in *Chevron* itself, the EPA regulations at issue *interpreted* the term "stationary source" in the Clean Air Act. *See Catholic Health Initiatives v. Sebelius*, 617 F.3d 490, 494 n.4 (D.C. Cir. 2010) (emphasis added). The mere fact that an administrative regulation serves a primarily interpretive purpose cannot possibly mean that the regulation is not entitled to *Chevron* deference categorically. *See id.*

deference.").  In *Orellana*, the Fifth Circuit declined to accord *Chevron* deference to an agency

regulation in a criminal case.  *Orellana*, 405 F.3d at 369.  There, the court questioned the

relevance of *Chevron* deference to an agency's interpretation of a statute imposing criminal

liability, "particularly where the promulgating agency lacks expertise in the subject matter being

interpreted."  *Id.* (citing *Babbitt v. Sweet Home Chapter of Cmtys. for a Great Or.*, 515 U.S. 687,

703 (1995)).  However, in *United States v. Flores*, 404 F3d 320 (5th Cir. 2005), the Fifth Circuit

found that deference, though not necessarily full *Chevron* deference, to an agency regulation was

appropriate in the criminal context because the regulation involved was "both reasonable and

consistent with [] interpretive norms for criminal statutes." *United States v. Flores*, 404 F.3d 320,

326-27 (5th Cir. 2005) (citation omitted)).  Other courts of appeal have also noted this lack of

clarity.  *See Nat'l Labor Relations Bd. v. Okla. Fixture Co.*, 332 F.3d 1284, 1287 (10th Cir.

2003) (explaining it is "not entirely clear exactly how the *Chevron* analysis is affected by the

presence of criminal liability in a statute being interpreted by an agency," and that deference may

depend upon "considerations of the agency's particular expertise"); *but see Yi v. Fed. Bureau Of

Prisons*, 412 F.3d 526, 535 (4th Cir. 2005) (applying *Chevron* deference to regulation

interpreting ambiguous statute regarding the Bureau of Prisons' granting of Good Conduct Time

instead of applying the Rule of Lenity); *cf. Sash v. Zenk*, 428 F.3d 132, 135 (2d Cir. 2005)

(Sotomayor, J.) (applying *Chevron* deference to BOP regulation related to sentence

administration because "the provision interpreted [] defines neither the scope of criminal liability

nor the penalty applicable to criminal punishment").

        These cases indicate that some amount of deference should be accorded to agency

regulations in the criminal context when (1) the agency has expertise in the area, (2) the

regulation is consistent with the interpretive norms accorded criminal statutes, and (3) when the

regulation does not interpret the scope of criminal liability or punishment; nevertheless, it is unclear what level of deference such regulations deserve.  *See Orellana*, 405 F.3d at 369, *Flores*, 404 F.3d at 326-27; *Okla. Fixture Co.*, 332 F.3d at 1287; *Sash*, 428 F.3d at 135.  With this in mind, the Court begins by considering the propriety of applying the *Chevron* framework to the SMART Guidelines.

First, a number of federal courts of appeal have held that "SORNA is a non-punitive, civil regulatory scheme, both in purpose and effect."  *United States v. Under Seal*, 709 F.3d 257, 263 (4th Cir. 2013); *Bridges*, 741 F.3d at 468 & n.5; *United States v. Davis*, 352 F. App'x 270, 272 (10th Cir. 2009) (citing *United States v. Comstock*, 507 F. Supp. 2d 522, 530 (E.D.N.C. 2007) (citing cases), *rev'd on other grounds*, 560 U.S. 126)).  As a noncriminal statute, it would seem that Justice Scalia's concern in his concurrence in *Crandon*, and the uncertainty regarding deference among the Courts of Appeal, would not be implicated by SORNA as a civil regime. *See Orellana*, 405 F.3d at 369.

Second, as explained above, Congress has explicitly left a gap for the Attorney General to fill in the SORNA statute, by expressly delegating authority to the Attorney General to issue "guidelines and regulations to interpret and implement this subchapter."  *See* 42 U.S.C. § 16912(b).  This grant of authority over "the relevant subchapter" applies to 42 U.S.C. §§ 16901-16962, the SORNA statute.  *See. Stevenson*, 676 F.3d at 564.  With this unambiguous grant of authority to the Attorney General, § 16912(b) would allow the Attorney General to promulgate both substantive and interpretive regulations regarding the statute.  *Id.*; *see Bridges*, 741 F.3d at 468 & n.5.

Further, as also set out above, the Attorney General promulgated the SMART Guidelines through formal notice-and-comment procedures as set out in the Administrative Procedures Act,

5 U.S.C. § 553.  *See Bridges*, 741 F.3d at 468; *Stevenson*, 676 F.3d at 565-66.  The Guidelines were an act of substantive rulemaking and have the force and effect of law. *Lott*, 750 F.3d at 217-18  ("These proposed guidelines carry out a statutory directive to the Attorney General, in section 112(b) of SORNA (42 U.S.C. § 16912(b)) to issue guidelines to interpret and implement SORNA." (quoting 72 Fed. Reg. 30,210 (May 30, 2007)); *Stevenson*, 676 F.3d at 565; *see also Mead*, 533 U.S. at 229 ("We have recognized a very good indicator of delegation meriting Chevron treatment in express congressional authorizations to engage in the process of rulemaking or adjudication that produces regulations or rulings for which deference is claimed.").  Indeed both the Fourth Circuit and the Sixth Circuit have specifically ruled that courts should accord *Chevron* deference to the SMART Guidelines.  *See Bridges*, 741 F.3d at 468 & n.5; *Stevenson*, 676 F.3d at 564-65.

These various courts of appeal were not concerned by this intersection of *Chevron* deference and criminal law in the instance of the SMART Guidelines and SORNA.  In addition, this precedent demonstrates Congress's belief that the Attorney General has expertise in the administration of sex offender registration, and that rulemaking in this area was rightly within his purview. All of this counsels in favor of the application of the *Chevron* framework to SORNA and the SMART Guidelines.

However, a district court in Vermont has found SORNA to be a "hybrid regulatory scheme, with criminal and noncriminal applications."  *United States v. Piper*, No. 1:12-cr-41-jgm-1, 2013 WL 4052897, at *6 (D.Vt. Aug. 12, 2013).  The *Piper* court explained that although SORNA contains civil provisions that set out minimal standards for state sex offender registries, an offender who fails to register faces criminal sanctions.  *Id.*  With regard to this dual nature of SORNA, the Second Circuit has explained:

> SORNA "establishes a comprehensive national system for the registration" of sex offenders, 42 U.S.C. § 16901, and makes federal funding contingent on state registries meeting minimal national standards. 42 U.S.C. § 16925. The baseline set by these standards covers "[t]he classes of persons who will be required to register; the means by, and frequency with which, registration information will be verified; the duration of registration; the time for reporting of changes in registration information; and the classes of registrants and the information about them that will be included on public sex offender [w]eb sites." SMART Guidelines, 73 FR at 38032. SORNA also requires sex offenders to maintain current information with state registries. 42 U.S.C. § 16913. This "federal duty" is enforced through criminal penalties.

*United States v. Guzman*, 591 F.3d 83, 93 (2d Cir. 2010).

While the relevant subchapter of SORNA in which Congress delegated rulemaking authority to the Attorney General is 42 U.S.C. §§ 16901-16962, *see Stevenson*, 676 F.3d at 564, the criminal enforcement provisions do not appear in this subchapter, rather in the criminal code. *See Piper*, 2013 WL 4052897, at * 6. So there is support for the notion that SORNA does not, in fact, authorize the Attorney General to interpret its criminal enforcement provision. *Id.*

Nevertheless, as the Court in *Piper* explained, § 16911 is a definitional section, and it is the definition of "sex offense" which determines who must register as a sex offender under § 16913, and therefore, who is subject to criminal liability for failing to register pursuant to 18 U.S.C. § 2250. *Id.* at *3-4. Thus, as the court in *Piper* noted, the definition of "sex offense" in SORNA in particular "serves both criminal and noncriminal functions," by determining the applicability of national standards such as coverage requirements for state registries as well as criminal liability under 18 U.S.C. § 2250. *Id.* at *7. Quoting the Second Circuit in *Guzman*, the *Piper* court noted that § 2250 and § 16913 are "clearly complementary: without § 2250, § 16913 lacks federal criminal enforcement, and without § 16913, § 2250 has no substance." *Id.* (quoting *Guzman*, 591 F.3d at 90). Still, given this hybrid nature of SORNA and the definition of the term "sex offense," the *Piper* court accorded *Chevron* deference to the SMART Guidelines to

maintain consistency in the definition "sex offense" in both the criminal and noncriminal contexts. *Id.* (citing *inter alia United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517–18 (1992)). The court found that applying *Chevron* deference would advance the "fair warning that must underlie criminal law" and SORNA's goal to "attempt to unify sex offender registries throughout the United States." *Id.* (citing *Reynolds v. United States*, --- U.S. ----, 132 S.Ct. 975, 978 (2012)).

This Court agrees with the district court in *Piper*. For the reasons explained there, namely consistency across the civil and criminal provisions of the statute as well as to provide the fair warning fundamental to criminal law, the Court believes that the *Chevron* framework is applicable to the SMART Guidelines. Further, because Congress delegated a broad grant of authority to the Attorney General to promulgate these rules, because the Attorney General subjected the rules to the formal rulemaking process, and because this case does not involve a criminal prosecution for failure to register under 18 U.S.C. § 2250, the Court finds the *Chevron* framework applicable here.

Having concluded that the *Chevron* framework applies to the SMART Guidelines, the Court proceeds to steps one and two of the *Chevron* analysis to determine whether the Court must defer to the Attorney General's interpretation of § 16911(7)(I).

### c.    Deference in light of *Chevron*

Relying on *Chevron*, Defendant argues the Court should defer to the Attorney General's interpretation of § 16911(7)(I) included in the SMART Guidelines, which states that the subsection "ensures coverage of convictions under statutes defining sexual offenses in which the status of the victim as a minor is an element of an offense." Def.'s Suppl. 1-2. (citing SMART Guidelines, 73 Fed. Reg. at 38,052). Under this interpretation, argues Defendant, the False

Statement offense at issue in this case is not a sex offense because it does not include the status of the victim as a minor as an element. *Id.* at 4.

The government argues that the SMART Guidelines are intended to set a national "floor, not a ceiling" for an expansive reading of sex offender classification and registration, so the regulatory provision is not entitled to deference by the Court. Gov't Resp. 3 (citing SMART Guidelines 73 Fed. Reg. at 38,046). The Court addresses these arguments below.

### i.      *Chevron* step one

In the first step of the *Chevron* analysis, the Court inquires "whether 'the statute is silent or ambiguous with respect to the specific issue' before it." *Aguirre–Aguirre,* 526 U.S. at 424 (quoting *Chevron*, 467 U.S. at 843). Defendant posits that the issue before the Court for *Chevron* purposes is whether a conviction for False Statement under 18 U.S.C. § 1001 subjects a person to SORNA's registration requirements. Def.'s Suppl. 3. In the alternative, Defendant asserts that more generally the issue before the Court is whether the conduct underlying a conviction can subject a defendant to registration notwithstanding the elements of the conviction. *Id.* at 3 n.3.

Regardless of which manner the question is framed, the Court finds that the statute is ambiguous. The relevant provisions of the statute provide that a person must register if that person is a "sex offender," 42 U.S.C. § 16913, which the statute defines as "an individual who was convicted of a sex offense." *Id.* § 16911(1). As explained above, SORNA defines "sex offense" as "(ii) a criminal offense that is a specified offense against a minor." *Id.* § 16911(5)(A)(ii). As relevant in this case, SORNA defines "specified offense against a minor" in subsection (ii) in the following way: "The 'term specified offense against a minor' means an offense against a minor that involves any of the following: . . . . (I) Any conduct that by its nature

22

is a sex offense against a minor." *Id.* § 16911(7)(I).  Expanding these nested provisions, the

Court discerns the definition of "sex offense" to be "an offense against a minor that involves . . .

'[a]ny conduct that by its nature would be a sex offense against a minor.'" *Id.* § 16911(1),

16911(5)(a)(ii), 16911(7)(I).  This definition restates "sex offense" as a "sex offense," explaining

it to be an offense against a minor involving conduct that by its nature is a sex offense against a

minor.  The phrase "conduct that by its nature is a sex offense" begs the questions "what

conduct" and "what is the nature of that conduct" that would constitute a "sex offense."  The

Court finds that this definition of "sex offense" is circular, and as such, § 16911(7)(I) is

inherently ambiguous.  *See Fogo De Chao Churrascaria, LLC v. U.S. Dept. of Homeland Sec.*,

959 F. Supp. 2d 32, 40-41 (D.D.C. 2013) (finding, in the *Chevron* context, that "defining

'specialized knowledge' as 'special knowledge' or 'advanced knowledge,' the plain language of

[the statute] is not clear, but rather is circular and 'inherently ambiguous'") (citing *United States

v. Bestfoods*, 524 U.S. 51, 56 (1998)).

 Further, as the court in *Piper* found, § 16911(7)(I) is ambiguous as to whether courts

should employ the categorical or noncategorical approach, that is, whether courts should look

only to the elements of the offense or to the surrounding facts and circumstances as well, when

determining whether an offense is a specified offense against a minor under § 16911(7)(I). [8] *See

Piper*, 2013 WL 4052897, at *8-9.   The court in *Piper* found this ambiguity based on, among

other things, the use of the word "convicted" in § 16913.  *Id.*  The *Piper* court pointed to the

Supreme Court's holding in *United States v. Taylor*, 495 U.S. 575, 600 (1990), which found the

use of the word "convicted" instead of "committed" in a sentencing enhancement statute for

---

[8] The *Piper* court refers to these classifications as the "elemental" and "factual" approaches for categorical and
noncategorical respectively.

certain prior criminal convictions indicated that the court should look only to certain categories

of crimes and not the facts underlying them. *Piper*, 2013 WL 4052897, at *8 (citing *Taylor*, 495

U.S. at 600).  The court in *Piper* determined, therefore, that while the use of "convicted" in §

16911(1) counsels in favor of the categorical approach, other provisions and subsections of the

statute militate in favor of employing the noncategorical or factual approach. *Id.* at *8-9.  The

*Piper* court also referred to the Ninth Circuit's holding in *Byun*, and noted that the *Byun* court

found that the presence of these indicators created "a modicum of ambiguity" in the statute. *Id.*

at *9.  This Court agrees with the *Piper* court and finds ambiguity in the statute for this

additional reason.

  Notwithstanding the above, the Ninth Circuit in *Byun* resolved the ambiguity itself

without considering the SMART Guidelines, by making "the best reading of the statutory

structure and language of [SORNA]." *Id.* (citing *Byun*, 539 F.3d at 992).   However, the

*Chevron* issue was not before the *Byun* court,[9] so the fact that the *Byun* court went ahead and

resolved the ambiguity itself does not preclude this Court from concluding the statute is

ambiguous. *See Byun*, 539 F.3d at 992.  Because this Court has before it a regulation that was

the product of formal rulemaking and promulgated pursuant to an explicit grant of authority from

Congress, what is of concern for this Court is whether the statute is ambiguous. *See Mead*, 533

U.S. at 226-30.  And because this Court finds the statute to be ambiguous, if the agency's

interpretation is a reasonable one, the reasonable agency interpretation controls, not the preferred

---

[9] There is no mention of *Chevron* in the *Byun* opinion so it appears that the issue was not before that court.
Moreover, *Byun* was decided on July 1, 2008, and the SMART Guidelines were published on July 2, 2008. *Compare Byun*, 539 F.3d at 982 (stating the date of the opinion as July 1, 2008, *with*  SMART Guidelines, 73 Fed. Reg. at 38,030 (stating that the Guidelines are published Wednesday, July 2, 2008)).  Further, *Byun* was amended on August 14, 2008, but only to correct the name of the territorial district of the court below and the name of the presiding district judge from whom the case had been appealed. *See Byun*, 539 F.3d at 982.

interpretation of this Court.  *See Silva-Trevino v. Holder*, 742 F.3d 197, 199 (5th Cir. 2014)

(citing *Nat'l Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 980 (2005)).

Finding ambiguity in the statute, the Court must proceed to *Chevron* step two.

### ii.    *Chevron* step two

Because the Court finds the language of § 16911 to be ambiguous both as to the

definition of "sex offense" as "[a]ny conduct that by its nature is a sex offense against a minor"

in § 16911(7)(I), and as to whether "sex offense" requires a court to take the categorical or

noncategorical approach in determining whether a criminal conviction is a sex offense under

SORNA, the Court proceeds to step two of the *Chevron* analysis. *See Aguirre-Aguirre*, 526 U.S.

at 424.  In step two, the court must determine whether the agency's interpretation is "based on a

permissible construction of the statute." *Luminant Generation Co. LLC v. U.S. E.P.A.*, 714 F.3d

841, 850-51 (5th Cir. 2013) (quoting *Mead*, 533 U.S. at 230).  And, "if the agency's

interpretation is reasonable, it will be upheld." *Id.* (quoting *Smiley v. Citibank, N.A.*, 517 U.S.

735, 744–45 (1996)); *Martinez*, 519 F.3d at 542-43.  "The court need not conclude that the

agency construction was the only one it permissibly could have adopted to uphold the

construction, or even the reading the court would have reached if the question initially had arisen

in a judicial proceeding."  *Chevron*, 467 U.S. at 843 n.11.

Defendant argues that the interpretation of § 16911(7)(I) is reasonable because taking the

categorical approach to determining whether an offense is as a sex offense based on §

16911(7)(I), as the Attorney General has done here, is supported by the presence in the statute of

the usual indicators that courts look to in determining whether to apply the categorical approach.

Def.'s Suppl. 3-4.  Defendant's primary focus here is the use of the word "convicted" in the

definition of "sex offender" in § 16911(1), that is a "'sex offender' means an individual who was

*convicted* of a sex offense." *See id* (emphasis added); *see also Byun*, 539 F.3d at 991; *Piper*, 2013 WL 4052897, at *8-9. As Defendant explains, the use of the word "conviction" in a statute generally calls for the categorical approach. Def.'s Suppl. 5 (citing *Moncrieffe v. Holder*, --- U.S. ----, 133 S.Ct. 1678, 1685 (2013) ("'Conviction' is the relevant statutory hook" for the categorical approach.")). This signal from Congress, Defendant asserts, supports the reasonableness of the Attorney General's interpretation. *Id.* The government does not argue that this interpretation is not a permissible or reasonable interpretation.

The Court finds this to be a reasonable interpretation. As explained above with regard to the ambiguity of § 16911(1) and § 16911(7), there are indications in the text of the statute that the categorical approach could apply to § 16911. The Attorney General chose to fill the gaps there by interpreting the phrase "any conduct that by its nature is a sex offense against a minor" to require the status of the victim as a minor to be an element of such an offense. *See* SMART Guidelines 73 Fed. Reg. at 38,052. This interpretation clarifies the meaning of the provisions, and removes the ambiguity stemming from the circular language in the definitions in the statute. *See Piper*, 2013 WL 4052897, at *11.

The government argues that this regulatory provision is not intended to delimit or qualify the term "sex offense," rather it is meant to define a regulatory floor in the establishment of state sex offender registries themselves. Gov't's Resp. 3. The Court disagrees. The provision of the SMART Guidelines applicable to § 16911(7)(I) further states "[j]urisdictions can comply with the offense coverage requirement under this clause by including convictions for such offenses in their registration requirements." SMART Guidelines, 73 Fed. Reg. at 38,052. This language does not counsel that this provision is meant as a "floor," as the government argues. What it indicates is the opposite, that the preceding sentence is the Attorney General's interpretation of

the statute, and that jurisdictions can comply with this interpretation by "including convictions for such offenses in their registration requirements." *See id.*

Furthermore, the SMART Guidelines provide examples of the sorts of offenses that would qualify as a specified offense against a minor under § 16911(7)(I). The SMART Guidelines state that this statutory provision "is intended to ensure coverage of convictions under statutes defining sexual offenses in which the status of the victim as a minor is an element of an offense such as specially defined child molestation or child prostitution offenses, and other offenses prohibiting sexual activity with underage persons." *Id.* These examples of qualifying offenses serve to clarify the ambiguity in § 16911(7)(I); indeed, they demonstrate an awareness of the presence of the ambiguity in the statute, and explain the purpose and meaning of the provision by listing specific offenses that are intended to be covered by this subsection. *See id.*

The government cites to the recent Fifth Circuit opinion *Gonzalez-Medina*, 2014 WL 2977128, for the proposition that the Court must take the noncategorical approach and look to facts surrounding the offense in determining whether it constitutes a sex offense. Gov't's Resp. 6-8 (citing *Gonzalez-Medina*, 2014 WL 2977128, at *4-5). However, the Fifth Circuit's holding in *Gonzalez-Medina* does not dictate the outcome here. In that case, the Fifth Circuit considered the meaning of § 16911(5)(C), the age differential exception to a sex offense, which is not at issue in this case. *Gonzalez-Medina*, 2014 WL 2977128, at *2. The Court cited the SMART Guidelines, along with *Byun*, for the proposition that "other age-specific SORNA provisions similarly appear to call for a circumstance-specific, rather than categorical, approach as to age determinations." *See id.* at *5 (citations omitted).

Indeed, the SMART Guidelines do call for a fact specific approach to age determinations. *See* SMART Guidelines, 73 Fed. Reg. at 38,052-53. Moreover, though the Fifth Circuit took the

27

fact specific approach to age determinations, the *Gonzalez-Medina* court clearly stated that it was not interpreting the term "sex offense," the term at the heart of the issue in this case. *See Gonzalez-Medina*, 2014 WL 2977128, at *2 n.1.  And notably, although not considering whether to accord *Chevron* deference to the SMART Guidelines, the Fifth Circuit did look to them for guidance.  *Gonzalez-Medina*, 2014 WL 2977128, at *5.

Though as the Fifth Circuit explained in *Gonzalez-Medina*, the SMART Guidelines favor applying the fact specific approach to age determinations, the SMART Guidelines counsel a different approach, that is the categorical approach, to determining whether an offense constitutes "any conduct that by its nature is a sex offense against a minor." *See* SMART Guidelines, 73 Fed. Reg. at 38,052.  So although the *Gonzalez-Medina* opinion suggests that the SMART Guidelines require a factual approach to certain provisions of § 16911, the case does not stand for the proposition that every subsection of § 16911 requires a factual, noncategorical approach.  Rather, *Gonzalez-Medina* supports this Court's finding that it should turn to the SMART Guidelines to seek guidance as to the meaning of provisions of §16911, and, as a result, that this Court should apply the categorical approach to § 16911(7)(I).  *See Gonzalez-Medina*, 2014 WL 2977128, at *5; SMART Guidelines, 73 Fed. Reg. at 38,052.

Furthermore, the interpretations of § 16911(7)(I) by the Ninth Circuit in *Byun* and the Eleventh Circuit in *Dodge*, that § 16911(7)(I) warrants a noncategorical or factual approach to determining whether an offense constitutes "any conduct that by its nature is a sex offense against a minor," do not foreclose the holding here. As explained above, the *Byun* court did not have occasion to consider the SMART Guidelines, as the case was decided one day before the publication of the final SMART Guidelines in the Federal Register:  *Byun* was decided on July 1, 2008, and the SMART Guidelines were published on July 2, 2008.  Compare *Byun*, 539 F.3d at

28

982 (stating the date of the opinion as July 1, 2008, *with* SMART Guidelines, 73 Fed. Reg. at

38,030 (stating that the Guidelines are published Wednesday, July 2, 2008).  Moreover, it does

not appear that the parties in *Byun* raised the SMART Guidelines, or the issuance of *Chevron*

deference to them, to the Ninth Circuit.  *See generally Byun*, 539 F.3d 982; *see* 72 Fed. Reg.

30,210. [10]   Nor does it appear that the parties raised these arguments before the Eleventh Circuit

in *Dodge*, and that court relied heavily on the ninth circuit's reasoning in *Byun*.  *See Dodge*, 597

F.3d at 1353-56.

Importantly, employing the categorical approach as set out by the SMART Guidelines to

the facts of *Dodge* would not require a different result.  In that case, the offense of conviction

was 18 U.S.C. § 1470, knowingly transmitting obscene material to a person less than sixteen

years old, with the knowledge that the person is less than sixteen years old.  *See id.* at 1351.

Clearly, that offense has as an element the status of the victim as a minor, so the SMART

Guidelines would not preclude the finding that § 1470 was a sex offense, even taking the

categorical approach.  *See* SMART Guidelines, 73 Fed. Reg. at 38,052; 18 U.S.C. § 1470.[11]

Finally, the Court finds it important to discuss one matter that the government does not

specifically address.  In its briefing with the Court, the government states that "[i]t is the

Government's the position that §16911(7)(I)'s coverage requirement can, and properly should,

also be met by requiring individuals to register as sex offenders who engaged in any other

conduct that by its nature is a sex offense against a minor."  Gov't's Resp. 4.

---

[10] Although the Attorney General had promulgated an interim rule on February 27, 2007, prior to the Ninth Circuit's decision in *Byun*, the Ninth Circuit later found the interim rule was improperly promulgated because it failed to comply with the notice and comment requirements of the APA, and refused to consider the retroactivity provisions. *United States v. Mattix*, 694 F.3d 1082, 1083 (9th Cir. 2012) (citing *United States v. Valverde*, 628 F.3d 1159 (9th Cir. 2010)).

[11] The issue not before it, this Court does not make a specific finding as to whether a conviction for 18 U.S.C. §1470 is a sex offense under SORNA.

To the extent that the government is informing the Court that it, as the representative of the Attorney General, interprets § 16911(7)(I) differently from what is set out in the SMART Guidelines, *Chevron* deference to the government's position first advanced in a litigation brief is inappropriate.  *See Pool Co. v. Cooper*, 274 F.3d 173, 177 n. 3 (5th Cir. 2001) (litigation briefs not entitled to Chevron deference). And while *Skidmore* deference, which as explained above, is usually accorded to agency interpretations of statutes they administer which do not carry the force of law, the Fifth Circuit has found that interpretations advanced in litigation briefs are due a level of deference described by the Supreme Court as "near indifference."  *Luminant Generation Co v. U.S. E.P.A.*, 675 F.3d 917, 928 (5th Cir. 2012); *see Mead*, 533 U.S. at 228 (citing *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 212–13 (1988)). "Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate." *Bowen*, 488 U.S. at 213; *see Luminant*, 675 F.3d at 928. The Fifth Circuit concluded that the court is only bound to extend "some modicum of deference" to interpretations advanced in a litigation brief. *Id.* (citing *Mead*, 533 U.S. at 228 and noting that the approach outlined in *Skidmore* "has produced a spectrum of judicial responses," with deference to litigation briefs at the lowest end of that spectrum).  With this small amount of deference appropriate, the Court does not find the government's position persuasive.

The Court finds the Attorney General's interpretation of the §16911(7)(I) as stated in the SMART Guidelines to be reasonable, so the Court proceeds to apply that interpretation to this case.  *See Chevron*, 467 U.S. at 844.

### d.    Deference to the SMART Guidelines

The Court, applying the categorical approach set forth in the SMART Guidelines to the facts of this case, concludes that Defendant is not required to register as a sex offender.  As

stated above, the only provision of § 16911 that possibly includes Defendant's offense of False

Statement as a sex offense is § 16911(7)(I) defining "specific offense against a minor" as "[a]ny

conduct that by its nature is a sex offense against a minor." *See* 42 U.S.C. § 16911(7)(I).  The

SMART Regulations interpreting this subsection state in part: "Any conduct that by its nature is

a sex offense against a minor. It is intended to ensure coverage of convictions under statutes

defining sexual offenses in which the status of the victim as a minor is an element of an offense."

SMART Guidelines, 73 Fed. Reg. at 38,052.  The crime to which Defendant has pleaded guilty,

False Statement, under 18 U.S.C. § 1001, provides inter alia:

> [W]hoever, in any matter within the jurisdiction of the executive, legislative, or
> judicial branch of the Government of the United States, knowingly and
> willfully—
> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
> (2) makes any materially false, fictitious, or fraudulent statement or
> representation; or
> (3) makes or uses any false writing or document knowing the same to contain any
> materially false, fictitious, or fraudulent statement or entry;
> shall be fined under this title, imprisoned not more than 5 years.

18 U.S.C. § 1001.

As is apparent, 18 U.S.C. § 1001 does not contain an element involving the status of the victim

as a minor.  *See* 18 U.S.C. § 1001.  False Statement is therefore not a specified offense against a

minor, nor is it a sex offense under SORNA.  *See* 42 U.S.C. § 16911.  Accordingly, Defendant

has not pleaded guilty to a sex offense under SORNA and registration is not required under

federal law.  *See* 42 U.S.C. §§ 16911, 16913.

### e.      According lesser deference than *Chevron*

Moreover, if this Court's conclusion that the SMART Guidelines are properly evaluated

under the *Chevron* framework is incorrect in the criminal context or for some other reason, the

Court nonetheless accords the SMART Guidelines significant respect under *Skidmore*. *See*

*Skidmore*, 332 U.S. at 140. The deference accorded to agency interpretations under *Skidmore* varies based upon "'the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade.'" *Nassar*, 133 S.Ct. at 2533 (quoting *Skidmore*, 323 U.S. at 140). The Court finds the SMART Guidelines persuasive in interpreting § 16911(7)(I) for the reasons set forth in the discussion of "interpretive rules" and because the SMART Guidelines foster consistency between the civil and criminal functions of SORNA, as explained by the court in *Piper*. *See Piper*, 2013 WL 4052897, at \*6-7. The Court further finds the SMART Guidelines persuasive because they are reasonable and consistent with the judiciary's interpretive norms for criminal statutes, as explained below. *See Flores*, 404 F.3d at 326-27.

Additionally, the Court reaches this conclusion because the SMART Guidelines are thorough, providing insight into the many aspects of the SORNA statute. *See generally* SMART Guidelines, 73 Fed. Reg. at 38,030-38,070. The SMART Guidelines are well-developed, the product of formal rulemaking and the result of public input which has been incorporated into the final regulations. *Id.* at 38,030-32 (noting receipt of "[a]pproximately 275 comments" which the Department of Justice "considered carefully" and incorporated into the final regulations). And, a number of courts of appeal have looked to them for direction in interpreting SORNA, whether or not formally according them *Chevron* deference. *See, e.g., Gonzalez-Medina*, 2014 WL 2977128, at \*5; *Bridges*, 741 F.3d at 468 & n.5; *Lott*, 750 F.3d 217-18; *Stevenson*, 676 F.3d at 564-65.

Given the thoroughness of the SMART Guidelines, the specificity with which they address the issue before this Court, the regard in which they are held by other courts, and the formality through which they were created, the Court finds the SMART Guidelines persuasive as

to the question in this case: whether a conviction for False Statement under 18 U.S.C. § 1001 constitutes a sex offense as "[a]ny conduct that by its nature is a sex offense against a minor" pursuant to 42 U.S.C. § 16911(7)(I).  The Court finds that it does not because it is not the type of offense which §16911(7)(I) was intended to reach.  *See* SMART Guidelines 73 Fed. Reg. at 38,052.

### f.      Applying the noncategorical approach

Moreover, even if the Court concluded that the SMART Guidelines are not worthy of either *Chevron* deference or *Skidmore* respect, the result would be the same.  If this Court adopted the noncategorical approach, and considered the facts and circumstances surrounding Defendant's offense, still the Court would not find that Defendant was "convicted of a sex offense" pursuant to SORNA  *See* 42 U.S.C. §§ 16911(1), 16913.

42 U.S.C. § 16911(1) provides that "[t]he term 'sex offender' means an individual who was convicted of a sex offense."  42 U.S.C. § 16911(1).  And, as relevant in this case and as discussed above, a sex offense is "an offense against a minor that involves . . . [a]ny conduct that by its nature is a sex offense against a minor."  *See id.* § 16911(7)(I).  The Court believes that by using the word "convicted" in § 16911(1), Congress intended, or the statute means, that a court must look to the conduct underlying the offense of conviction to determine whether an offense constitutes a sex offense.  *See id.*  The word "convicted" ties the conduct that "by its nature is a sex offense against a minor" to the conduct of the offense of conviction. *See* 42 U.S.C. § 16911(1), 16911(7)(I).  Under this reasoning, it is the offense of conviction that must qualify as a sex offense against a minor given the elucidating facts surrounding the conviction, as determined by the noncategorical approach.

Looking to the facts of this case, it is true that within the factual basis, to which Defendant admitted as part of the Plea Agreement, Defendant admitted he engaged in acts that involved sexual contact with a minor.  Specifically, the false statements Defendant made were:

> that on the night of September 13, 2012 his wife was physically present in their home the entire evening; that on the night of September 13, 2012 Baptiste did not receive a massage from M.A.; and that on the night of September 13, 2012 Baptiste had never touched M.A.'s inner thighs and licked her vagina with his tongue.

Plea Agreement 6.

And Defendant further admitted:

> These statements were not factually true in that on the night of September 13, 2012 Baptiste's wife was not home the entirety of the evening, she was performing 24 hour Staff Duty Officer duty at her military command's headquarters and this duty kept her out of the home for the majority of those 24 hours; on the evening of September 13, 2012 Baptiste did receive a massage from M.A.; and that on the evening of September 13, 2012 Baptiste did touch M.A.'s inner thighs did [sic] lick M.A.'s vagina with his tongue.

*Id.*

However, the acts involving the minor, M.A., while the subject matter of the false statement, do not comprise the conduct giving rise to the False Statement conviction.  *See* 18 U.S.C. § 1001; *see generally* Plea Agreement.  Such acts, if charged in the information to which Defendant pleaded guilty, might well give rise to a sex offense conviction as defined by § 16911, but the conduct giving rise to such an uncharged and unconvicted offense is not the source of the conviction here.

Moreover, the primary victim of a false statement offense is the government.  *See United States v. Rodriguez-Rios*, 14 F.3d 1040, 1045 (5th Cir. 1994) (en banc) (citing *United States v. Gilliland*, 312 U.S. 86, 93 (1941)); *United States v. Montemayor*, 712 F.2d 104, 107 (5th Cir. 1983). Indeed, the purpose of the false statement statute is "to protect the government from

practices that would pervert its legitimate functions." *Rodriguez-Rios*, 14 F.3d at 1045 (citing *Gilliland*, 312 U.S. at 93).

In the cases cited by the government to support the use of the noncategorical approach and to consider the facts underlying the offense of conviction, *United States v. Dodge* and *United States v. Byun*, the direct victims of the offense and its conduct were not the government, but rather a minor.  In *Dodge* the conduct at issue was knowingly transferring obscene material to a person less than sixteen years old under 18 U.S.C. § 1470.  *Dodge*, 597 F.3d at 1351. The victim of the offense was a minor, and the facts showed that the acts constituting the conduct of the offense of conviction were sexual in nature.[12]  *See id.* at 1355.  In *Byun*, the conduct at issue was importation of an alien for prostitution pursuant to 18 U.S.C. § 1324 and § 1328; the facts demonstrated that the victim was a minor, and the conduct of the offense, importing an alien for prostitution was also sexual in nature.  *See Byun*, 539 F.3d at 983, 994.

Those courts looked to the facts to shed light upon the conduct which constituted the offenses of conviction to determine if those convictions were a sex offense. *See id.* at 994; *Dodge*, 597 F.3d at 1351, 1355. But in looking at the facts and circumstance of the offense of conviction, the courts did not transform the offense of conviction into a completely different offense to find the existence of a sex offense.  In fact, in determining whether the offense of conviction was a sex offense, the core of the offenses in *Dodge* and *Byun* was not altered by consideration of the facts; the convictions had been and remained importing aliens for prostitution and transferring obscene material to a person under the age of sixteen, respectively. *See id.* at 994; *Dodge*, 597 F.3d at 1351, 1355.  The facts considered by the courts in *Byun* and

---

[12] The Court recognizes that "in some situations a sexual act might not even be the prerequisite to a registerable 'sex offense.'"  *See Dodge*, 597 F.3d at 1355.  Under the facts here, however, sexual acts are implicated.

*Dodge* revealed the offenses of conviction to be sex offenses based upon the conduct giving rise to the conviction, but they did not turn the offenses of conviction into completely different offenses. *See Byun,* 539 F.3d at 994; *Dodge*, 597 F.3d at 1351, 1355.

The facts of both *Dodge* and *Byun* present a very different situation from the case at hand. In this case, the conduct constituting the offense of False Statement are the three false statements Defendant made to the FBI. The minor is not the primary victim of the False Statement. *See Rodriguez-Rios*, 14 F.3d at 1045. For the Court to find a sex offense in the False Statement conviction in this case, it would be necessary for the facts of the case to transform the conduct giving rise to the False Statement offense from knowingly making a false statement to the United States government into some form of abusive sexual contact under 18 U.S.C. § 2244. The courts in *Byun* and *Dodge* did not go this far, and this Court is unwilling to do so here.

Finding that registration pursuant to SORNA for this federal offense is not required as a condition of supervised release, the Court turns to whether Defendant must register under Texas law and whether the Court should impose registration pursuant to its discretionary powers to do so.

### 3.    Registration under Texas law as a condition of supervised release

With regard to registration pursuant to Texas law, the government states, "The determination as to whether the Defendant must register as a sex offender under the laws of the state of Texas, absent a determination that he must register under SORNA, will ultimately be adjudicated by the state of Texas." Gov't Br. 13. This is not entirely true. This Court can make a determination as a condition of his supervised release whether Defendant must register under Texas law. *See United States v. Arms*, 349 F. App'x 889, 891-92 (5th Cir. 2009) (citing *United States v. Talbert*, 501 F.3d 449, 452 (5th Cir. 2007)).

Defendant argues that registration is not required under Texas law.  Def.'s Mem. 1-4. The government comes very close to conceding this point. Gov't Br. 13-14. Based upon a review of Defendant's arguments, and based upon the government's response, it would appear that Defendant need not register as a sex offender under Texas law.  However, the Court refrains from making a determination on this issue.

### 4.     Discretionary imposition of registration requirements as condition of supervised release

Finally, the government requests that, should the Court find that registration is not mandatory, the Court impose registration as a sex offender as a discretionary condition of supervised release.  See Gov't Br. 7 (citing 18 U.S.C. § 3583(d)(1)-(3)).  These discretionary conditions of supervised release

> must be related to one of four factors: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need . . . to afford adequate deterrence to criminal conduct; (3) the need . . . to protect the public from further crime of the defendant; and (4) the need . . . to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

*United States v. Ellis*, 720 F.3d 220, 225 (5th Cir. 2013) (citations and quotation marks omitted).

Upon consideration of the facts of this case, the Court finds that the government's concerns are better addressed by conditions of supervised release other than sex offender registration.  The Court shall impose such conditions by separate order.

**III.     CONCLUSION**

For the foregoing reasons, the Court finds that Defendant shall not be required to register

as a sex offender as a condition of supervised release pursuant to 42 U.S.C § 16913.

**SO ORDERED.**

.

SIGNED this 24th  day of July, 2014.


_Kathleen Cardone_
_____
KATHLEEN CARDONE
UNITED STATES DISTRICT JUDGE